**James V. VASSAR, Petitioner,**

**v.**

**UNITED STATES of America,
Respondent.**

**Civ. No. 73–468–D.**

United States District Court,
W. D. Oklahoma,
Civil Division.

Oct. 24, 1974.

**68**

Page Dobson, Oklahoma City, Okl., for petitioner.

John E. Green, Asst. U. S. Atty., Oklahoma City, Okl., for respondent.

## MEMORANDUM AND ORDER

DAUGHERTY, Chief Judge.

The petitioner, James V. Vassar, a federal prisoner in the United States Penitentiary, Atlanta, Georgia, submitted to this court on July 12, 1973, his Motion, Pursuant to Section 2255 of Title 28, United States Code to vacate the judgment and sentence of this court in case No. CR–72–171. As grounds for relief he alleged:

1. The court failed to comply with Rule 11 of the Federal Rules of Criminal Procedure in accepting his pleas of nolo contendere to counts 1 and 2 of the Indictment, and

2. That such pleas were involuntary because he was promised by his attorney and state and federal officers that he would receive only probation if he entered the pleas of nolo contendere.

This court granted petitioner's motion for permission to proceed in forma pauperis and on July 25, 1973, entered an Order requiring the petitioner to make his petition more definite and certain. On August 9, 1973, the petitioner filed an Amendment to his Motion and the court thereafter on August 15, 1973, entered an Order requiring the respondent to show cause within 20 days why the motion should not be granted and the petitioner granted appropriate relief. The United States Attorney for the Western District of Oklahoma on September 10, 1973 filed the required Response.

Thereafter on September 25, 1973, the court after examining the files and records herein, together with those in said case No. CR–72–171, found therefrom that there was full compliance by the court with the requirements of Rule 11, Federal Rules of Criminal Procedure in accepting petitioner's pleas of nolo contendere and that the petitioner was not entitled to relief on this alleged ground. It further found, however, that the petitioner's allegations concerning the voluntariness of his pleas did present material issues of fact requiring an evidentiary hearing. Pursuant to the authority of Reed v. United States, 438 F. 2d 1154 (CA10 1971) the court directed this issue be presented to the court on written interrogatories and answers thereto by all witnesses possessing pertinent information. The court appointed counsel to represent the petitioner.

The petitioner has filed herein his own deposition and respondent has filed the depositions of five other witnesses. Counsel for both sides have now advised the court that they have nothing further to present to the court and the matter is ready for final decision. Having examined the files and records herein and all the interrogatories and answers submitted by the parties together with the files and records of this court in said case No. CR–72–171 the court makes the following Findings of Fact and Conclusions of Law concerning petitioner's allegedly involuntary pleas:

## I. FINDINGS OF FACT

1. In February, 1972, the petitioner was arrested on a weapons related charge by the Oklahoma City Police Department. When interviewed by Mr. Bob Tash, Oklahoma City Police Department petitioner agreed to attempt to obtain information for him concerning a large auto theft ring operated by a Joe Cecil.

2. Unknown to Officer Tash, Joe Cecil also was involved with the distribution of counterfeit money. On March 31, 1972, the petitioner passed two $20 counterfeit bills which he had obtained from Cecil.

3. On April 7, 1972, the petitioner was charged by Complaint with passing the two counterfeit bills in violation of 18 U.S.C. § 472. He was arrested on that date as a result of undercover work by B. Jack Henry, Special Agent, Alcohol, Tax and Firearms and Gary Strnad, Special Agent, Secret Service. Subsequent to his arrest he agreed to cooperate with the federal agents in obtaining proof of Joe Cecil's counterfeit activities.

4. Following his arrest on the federal charges, the petitioner also provided information to Mr. Tom Bunting, of the Oklahoma State Bureau of Investigation concerning illicit drug activities.

5. The petitioner was told by Mr. Gary Strnad and Mr. B. Jack Henry that if he cooperated with them this fact would be brought to the attention of the United States Attorney. Both did fully apprize the United States Attorney of the petitioner's cooperation with them and other law enforcement agencies.

6. No promises or other assurances were given at any time to the petitioner by B. Jack Henry, Gary Strnad, Bob Tash or Tom Bunting as to the final disposition of his pending federal counterfeit charges.

7. On May 11, 1972, the petitioner was charged in a three count Indictment with violation of 18 U.S.C. § 472. In Count 1 it was charged that on March 31, 1972, the petitioner passed a counterfeit $20 bill at Dunn's Dairy Queen in Oklahoma City. In Count 2 it was charged that on March 31, 1972, he passed a counterfeit $20 bill at the U-Totem grocery store in Oklahoma City. Count 3 charged that on March 31, 1971, Joe Vernon Vassar did with intent to defraud keep in his possession at Oklahoma City two counterfeit $20 bills. On May 19, 1972, the petitioner appeared for arraignment before Judge Fred Daugherty with his privately retained attorney, Mr. Lloyd G. Larkin. The court explained each count of the Indictment to the petitioner and the petitioner informed the court that he understood each charge. (Tr. 4, 5 and 6). The Assistant United States Attorney, Mr. John E. Green, stated in open court that the maximum punishment for each offense was a fine of not more than $5000 or imprisonment for not more than 15 years, or both. The court inquired of the defendant if he understood that he could receive such a sentence as to each of the three counts if he plead guilty or was convicted, and the defendant affirmatively stated that he did. (Tr. 6). After counsel for the defendant indicated he might later want to change his pleas to nolo contendere the defendant entered a plea of not guilty to all counts.

8. On June 14, 1972, the petitioner again appeared in open court with his attorney and executed a waiver of jury trial as provided by Rule 23(a), Federal Rules of Criminal Procedure. The case was set for non-jury trial on July 11, 1972, at 1:30 p. m.

9. On June 19, 1972, the petitioner filed a motion for continuance which was denied by the court on that same date.

10. When the case came on for trial on July 11, 1972, the petitioner appeared with his attorney, Mr. Lloyd G. Larkin, who announced that the petitioner desired to withdraw his pleas of not guilty and plead nolo contendere. (Tr. 9). In response to specific inquiry by the court the petitioner again confirmed that he understood the nature of the three charges and the maximum punishment that could be assessed as to each charge if he plead nolo contendere. (Tr. 11). He then entered a plea of nolo contendere to counts 1 and 2 of the Indictment. (Tr. 11). He disavowed any promises or threats and declared that he was changing his pleas of his own free and voluntary will. (Tr. 12). He told the court that he had discussed this action with his attorney with whose services he was "very much" satisfied. (Tr. 12). The government objected to the nolo contendere pleas and announced its intention of dismissing Count 3 of the Indictment because of defects in the Indictment. Mr. Green, the Assistant United States Attorney assured the court that this was not done as a result of a plea bargain and "without any promises

or anything." (Tr. 13). The effect of this was explored with the petitioner by the court with the defendant again disclaiming any promises. (Tr. 13 and 14). The court fully explained to the petitioner that he was giving up his right to a trial including the right of confrontation and his right to present evidence in his own behalf. The petitioner stated that he understood this and that this was his wish. (Tr. 14 and 15). For both counts 1 and 2 the defendant advised the court that he had done the acts alleged and knew that the bills that he passed were counterfeit. (Tr. 15 and 16). The court then accepted the pleas of nolo contendere and deferred sentence until a pre-sentence report was received. (Tr. 16).

11. There was no plea bargain by the government and the United States Attorney made no promises to the petitioner or his attorney.

12. The petitioner's attorney advised the petitioner that there was no plea bargain and that his pleas of nolo contendere would be unconditional and without guarantees of any kind.

13. The petitioner's attorney did not advise the petitioner that he would receive two years probation on the charges.

14. The petitioner's attorney told the petitioner that he had no indication whatsoever from the court as to the sentences which the court might impose.

15. After the petitioner's pleas and prior to sentencing the court was provided with affidavits of Mr. Bob Tash, Oklahoma City Police Department and Mr. Tom Bunting, Oklahoma State Bureau of Investigation concerning the assistance provided to them by the petitioner.

16. The pre-sentence report prepared for the court by the Probation Officer fully developed the extent of petitioner's cooperation with law enforcement personnel.

17. On August 14, 1972, the petitioner again appeared in court with Mr. Lloyd G. Larkin for sentencing. The petitioner made a long statement in mitigation of punishment detailing his co-operation with law enforcement officers. (Tr. 19 and 20). His attorney also made an extensive statement in behalf of his client. The court then imposed concurrent sentences of seven and one-half years imprisonment on each count.

18. The petitioner is now incarcerated at the United States Penitentiary at Atlanta, Georgia by virtue of the sentences imposed by the court in said case No. CR–72–171.

## II. CONCLUSIONS OF LAW

1. Pleas of nolo contendere by the petitioner to the offense of passing counterfeit bill in violation of Title 18 United States Code, Section 472 as charged in Counts 1 and 2 of the Indictment in said case No. CR–72–171 were made voluntarily with understanding of the nature of the charges and the consequences of the pleas and there was a factual basis for the pleas.

2. The petitioner is lawfully detained in federal custody by virtue of the sentences which he received from the court in said case No. CR–72–171.

## III. COMMENT

■ It is not disputed that the petitioner provided some assistance to the various local, state and federal law enforcement agencies. Undoubtedly his cooperation was largely motivated by his hope for favorable treatment in the disposition of his pending cases. The only promise he received, however, was that his actions would be brought to the attention of the United States Attorney. Petitioner's suggestion that he was promised by federal officers that he would receive a probationary sentence is simply incredible. If the bargain had been struck with the agents, as he contends, before his assistance was provided then there would have been no necessity for his plea of not guilty, waiver of jury, motion for continuance, subpoenas for mitigation, witnesses, affidavits of witnesses and other tactical maneuvers. It is obvious that he had not been told by anyone, and did not know, what he would receive from the court when he entered

his pleas of nolo contendere. There is no other explanation for his manifest anxiety concerning the final disposition of his case. His story that he had been promised a probationary sentence is contradicted by the testimony of all officers, his own attorney and his own declarations to the court when he changed his pleas. Petitioner was not an uncounseled babe unfamiliar with the workings of the criminal law but an intelligent criminal who had been involved in many encounters with the law. Overwhelmed by the evidence of his guilt he calculated his position and made a rational decision to cooperate and subsequently to plead nolo contendere. The fact of his cooperation was fully made known to the sentencing judge. It was set forth in the pre-sentence report, by affidavit of all officers and in the exercise of the right to allocution by petitioner and his attorney. He had been assured of no more. He could reasonably expect no more. When an accused has been promised that his cooperation will be made known to the sentencing judge and the cooperation is described in the pre-sentence report the promise has been kept and there is no reason to vacate his sentence. X v. United States, 454 F.2d 255 (CA2 1971). Facts similar to those in this case appear in Davidson v. United States, 236 F. Supp. 264 (W.D.Okla.1964), affmd. 349 F.2d 530 (CA10 1965). There the accused was told by the agent that if he would become an informer for the Federal Narcotics Bureau he would report that fact to the United States District Attorney. No promises of immunity from prosecution or securing a light sentence were made by the agent. He was advised by privately retained and competent counsel and the court found that petitioner's guilty pleas were voluntary. See also Rosenbaum v. United States, 413 F.2d 298 (CA5 1969).

 It appears that counsel may have expressed to petitioner the belief "that he should have a reasonable chance for probation in spite of his lengthy past record." An attorney's stated opinion to his client as to what he estimates, guesses or thinks the sentence of the court may be will not support a collateral attack on the sentence if he happens to estimate, guess or think wrong. Holland v. United States, 406 F.2d 213 (CA5 1969). As pointed out in Wellnitz v. Page, 420 F.2d 935, 936 (CA10 1970):

"An attorney may offer his client a prediction, based upon his experience or instinct, of the sentence possibility the accused should weigh in determining upon a plea. An erroneous sentence estimate by defense counsel does not render a plea involuntary."

This court is not disposed to lightly disregard petitioner's pleas and his attendant declarations to the court concerning any inducement simply because his personal hope or expectations for leniency were not realized and he now has belated misgivings about the wisdom of his pleas. See United States v. Woosley, 440 F.2d 1280 (CA8 1971). When an accused goes before the court and tells the trial judge that no "deal" has been made he is not entitled to have his sentence vacated on the ground that he was induced to plead guilty by promises of law enforcement agents that he would receive a light sentence. Alvereze v. United States, 427 F.2d 1150 (CA5 1970).

## IV. ORDER

 Accordingly, since the court on September 25, 1973, adjudged that the records and files examined by the court conclusively show that there was full compliance by the court with the requirements of Rule 11, Federal Rules of Criminal Procedure, in accepting petitioner's pleas of nolo contendere and has further determined, as shown by the above Findings of Fact and Conclusions of Law, that petitioner's pleas of nolo contendere were not involuntary as alleged by him, the Motion Pursuant to Title 28, U.S.C.A. § 2255 to vacate the judgment and sentence of this court in case No. CR–72–171 will be denied.

It is so ordered.